UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHANNON N. RAY,

                       Plaintiff,                             **DECISION AND ORDER**

           v.                                  1:19-CV-00345 EAW

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

_____

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Shannon N. Ray ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 15), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 11) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on September 8, 2014. (Dkt. 6-2 at 23; Dkt. 6-3 at 2-3).[1]  In her applications, Plaintiff alleged disability beginning February 7, 2012, due to adult seizures, depression, anxiety, panic attacks, urinary incontinence, bipolar disorder, and claustrophobia.  (Dkt. 6-2 at 23; Dkt. 6-3 at 4, 16).  Plaintiff's applications were initially denied on February 6, 2015.  (Dkt. 6-2 at 23; Dkt. 6-3 at 2-3).  At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Lisa B. Martin on July 14, 2017, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding over the hearing from Alexandra, Virginia.  (Dkt. 6-2 at 23, 63-123).  On March 20, 2018, the ALJ issued an unfavorable decision.  (*Id.* at 20-47).  Plaintiff requested Appeals Council review; her request was denied on January 14, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 2-7).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I.   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2015.  (Dkt. 6-2 at 25).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 7, 2012, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of lumbar spine disorder, ankle disorder status-post fracture, osteoarthritis, irritable bowel syndrome, obesity, asthma, psychosomatic seizures/spells, major depressive disorder, bipolar disorder, post-traumatic stress disorder, attention deficit disorder, and anxiety disorder.  (*Id.* at 26-28).   The ALJ further found that Plaintiff's medically determinable impairments of seizure disorder, hand numbness, hearing loss, chronic sinus infections/chronic rhinitis, and migraines were nonsevere.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 28).  The ALJ particularly considered the requirements of Listings 1.02, 1.04, 3.03, 11.00, 12.02, 12.04, 12.06, 12.07, 12.15, and all listings under subsection 5.00 in reaching this conclusion.  (*Id.* at 28-31).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional non-exertional limitations that:

[Plaintiff] needs an opportunity to change positions as often as hourly for 1-2 minutes.  [Plaintiff] is precluded from all climbing of ladders, ropes, or scaffolds, and is limited to occasional postural motions otherwise.  She must avoid all exposure to dangerous work hazards, including unprotected heights and exposed moving machinery, all exposure to extreme heat, humidity, and cold, and all exposure to concentrated pulmonary irritants.  She is limited to detailed, but not complex, work tasks, not involving a fast assembly quota pace, and not involving more than occasional work interactions with co-workers, supervisors, and public.  [Plaintiff] will be off task up to 5% of the workday due to symptom exacerbations.

(*Id.* at 31).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 38).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of inspector/packers and subassembler. (*Id.* at 38-39).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision.  (*Id.* at 39).

## II.  **The Commissioner's Determination Is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing: (1) the ALJ's physical RFC finding was unsupported by substantial evidence; and (2) the ALJ failed to properly evaluate the implications of Plaintiff's diagnosed borderline intellectual functioning.  (Dkt. 11-1 at 17-27).  The Court has considered these arguments and, for the reasons discussed below, finds them to be

without merit.

A.   **The ALJ's Physical RFC Assessment Is Supported by Substantial Evidence**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).  In this case, the ALJ relied on the opinions of consultative examiner Dr. Donna Miller, D.O. and treating physician Dr. N. Kalakada, M.D. in assessing Plaintiff's physical RFC.  (Dkt. 6-2 at 36-37). In particular, the ALJ gave great weight to the opinion of Dr. Miller, great weight to the September 2012 opinion of Dr. Kalakada, and partial weight to the April 2014 opinion of Dr. Kalakada.  (*Id.*).

When weighing a medical opinion from a non-treating source, such as a consultative examiner, an ALJ is required to consider the following:

> (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record.

*Bump v. Comm'r of Soc. Sec.*, No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *3 (N.D.N.Y. Oct. 28, 2016). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Here, the ALJ gave great weight to Dr. Miller's opinion "because it is consistent with the record as a whole, including the claimant's reports . . ., longitudinal medical treatment, and imaging studies of the claimant's spine and right lower extremity," as well as "Dr. Miller's own in-person examination" of Plaintiff. (Dkt. 6-2 at 36-37). The Court has reviewed Dr. Miller's opinion, evaluation, and the other medical evidence of record cited by the ALJ and finds that the ALJ's consideration and weighing of this opinion was proper. *See Bunce v. Comm'r of Soc. Sec.*, No. 6:14-CV-761 (GTS/ATB), 2015 WL 5330299, at *13 (N.D.N.Y. Sept. 11, 2015) (finding the ALJ's consideration of medical opinion evidence was supported by substantial evidence where he assigned the opinion of consultative examiner "great weight," because, among other things, it was consistent with consultative examiner's own examination findings).

Plaintiff argues the ALJ should not have accorded Dr. Miller's opinion great weight because Dr. Miller did not consider imaging of Plaintiff's neck and back in her opinion. However, the cases Plaintiff cites do not stand for that proposition; they hold that it is not appropriate to rely on medical opinions that are contradicted by objective medical evidence, *see Burgess v. Astrue*, 537 F.3d 117, 131-32 (finding remand appropriate where

ALJ relied on medical opinion stating there was "no objective reason" the plaintiff would have physical limitations, which was contradicted by an MRI report); *Alessi v. Colvin*, No. 14-CV-7220 (WFK), 2015 WL 8481883, at \*5 (E.D.N.Y. Dec. 9, 2015) (same), or to accord significant weight to a consultative opinion when there is no interpretation of imaging results in the record and no opinion about the plaintiff's limitations from a treating physician, *see Scott v. Comm'r of Soc. Sec.*, No. 16CIV3261VECSN, 2017 WL 1458773, at \*3 (S.D.N.Y. Apr. 24, 2017) (remanding where only medical opinion of record was accorded significant weight even though there was no assessment of the plaintiff's limitations in light of a CT scan); *Riddick v. Comm'r of Soc. Sec.*, No. 14-CV-8453 (RLE), 2016 WL 816795, at \*9 (S.D.N.Y. Feb. 29, 2016) (finding remand appropriate where there were significant gaps in the record with respect to the plaintiff's hip impairment).  In the instant matter, the ALJ found that Dr. Miller's opinion was supported by the imaging studies, consistent with the opinions and treatment notes of Plaintiff's treating physician Dr. Kalakada, and noted that "the physical examinations of [Plaintiff]'s spine were generally within normal limits and she predominantly received conservative treatment for back pain."  (Dkt. 6-2 at 33, 36-37; *see* Dkt. 6-7 at 27, 291; Dkt. 6-8 at 22; Dkt. 6-9 at 15, 80, 231, 528, 558, 579).  In other words, the ALJ comprehensively explained her reliance on Dr. Miller's opinion, and her reliance was supported by substantial evidence of record. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (concluding that ALJ had no obligation to supplement record by acquiring additional medical information where ALJ had all of the plaintiff's treating physician's treatment notes and consulting examining physician's opinion supported ALJ's assessment of RFC).

Plaintiff also argues that Dr. Miller's opinion was too vague to demonstrate that Plaintiff can perform light work.  (Dkt. 11-1 at 18-19).  In her opinion, Dr. Miller found that Plaintiff "has mild to moderate limitations with heavy lifting, bending, carrying, pushing, and pulling secondary to her Spina bifida and tethered cord," and "mild to moderate limitations with prolonged standing and walking secondary to a recent ankle fracture."  (Dkt. 6-8 at 353).  Courts routinely find it is appropriate for an ALJ to rely on medical source opinions finding that a plaintiff has mild or moderate limitations to support an RFC determination that a plaintiff can perform light work when there is other evidence of record also supporting that conclusion.  *See, e.g.*, *Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) ("[T]he ALJ's determination that [the plaintiff] could perform 'light work' is supported by Dr. Datta's assessment of 'mild limitations for prolonged sitting, standing, and walking,' and direction that Lewis should avoid 'heavy lifting, and carrying.'"); *Gerry v. Berryhill*, No. 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) (collecting cases).

As previously discussed, the ALJ did not solely rely on Dr. Miller's statement that Plaintiff had "mild to moderate limitations" in crafting her RFC determination, but also considered other evidence, including the examination conducted by Dr. Miller.  Dr. Miller noted that during the examination Plaintiff's "gait was wide based," she used no assistive devices, and that she could rise from her chair without difficulty.  (Dkt. 6-8 at 351).  Dr. Miller also noted limitations in Plaintiff's range of motion in her lower and middle back, as well as her hip, and that while "bending, lifting, and changes in the weather" trigger Plaintiff's back pain, "[m]edication helps alleviate it," and the pain does not radiate.  (*Id.*

at 350, 352).  Other evidence of record corroborated Dr. Miller's findings, including the opinions of Plaintiff's treating physician and numerous physical examinations of Plaintiff's spine in the record.  In particular, the ALJ discussed a June 2017 examination noting that although Plaintiff "ambulated with an antalgic gait and station, favoring her right leg," her motor testing was 5/5 in her upper and lower extremities and that her straight leg raise test was negative.  (Dkt. 6-11 at 61-62).  Under these circumstances, Dr. Miller's findings were not vague, and the ALJ's decision to afford her opinion great weight was supported by substantial evidence.

The cases cited by Plaintiff are not dispositive—they all support the proposition that vague statements, without more, cannot support an ALJ's RFC finding.  *See Hurley v. Colvin*, No. 6:17-CV-06031(MAT), 2018 WL 1250020, at *4 (W.D.N.Y. Mar. 12, 2018) (finding remand appropriate where medical opinion used vague terms and no other substantial evidence of record supported the RFC finding); *Gagovits v. Colvin*, No. 15-CV-3246(JS), 2016 WL 4491537, at *11 (E.D.N.Y. Aug. 25, 2016) ("[T]he Court finds that Dr. Greenberg's opinion—which uses the term 'moderate' without additional information or development—is so vague as to render it useless in evaluating the [plaintiff]'s residual functional capacity." (quotation and original alterations omitted)); *Meadors v. Colvin*, No. 5:13-CV-0160 LEK, 2015 WL 224759, at *10 (N.D.N.Y. Jan. 15, 2015) ("[U]se of the terms 'mild' and 'moderate,' without additional information, is too vague[.]"); *Correa v. Colvin*, No. 13-CV-2458 JFB, 2014 WL 4676513, at *8 (E.D.N.Y. Sept. 19, 2014) (finding remand appropriate where ALJ relied on medical opinion "despite its vague functional findings" where other examinations in the record reached specific conclusions regarding

the plaintiff's ability to sit); *Girolamo v. Colvin*, No. 13-CV-06309 MAT, 2014 WL 2207993, at *7 (W.D.N.Y. May 28, 2014) (finding reliance on medical opinion improper where use of terms "moderately limited" and "prolonged periods" were vague *under the circumstances of the case* and where the opinion was stale).  Because, as discussed above, Dr. Miller's opinion provided additional information, as did the other medical evidence of record, the Court is not persuaded by Plaintiff's argument.

Plaintiff additionally contends the ALJ erred by not explaining why certain limitations from Dr. Kalakada's April 2014 opinion were not included in the RFC.  Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]"  20 C.F.R. § 404.1527(c)(2).  Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).  These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id*.  "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight at step two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation

omitted).  However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed."  *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion."  20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . . ."  *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).  The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."  *Halloran*, 362 F.3d at 33.

In this case, the ALJ gave the April 2014 opinion from Dr. Kalakada partial weight. (Dkt. 6-2 at 37).  The ALJ found that the opinion was "consistent with physical examinations at the time [Plaintiff] fractured her ankle," but that "it is somewhat vague and the limitations opined are temporary, as they were expected to last no more than six months."  (*Id.*).  The ALJ further noted that "there is no evidence Dr. Kalakada specializes in the fields of orthopedics."  (*Id.*).  The Court has reviewed Dr. Kalakada's April 2014

opinion and finds it consistent with the ALJ's description, and that the ALJ provided good reasons for giving the opinion partial weight.   The Court further finds that the ALJ complied with the treating physician rule, having noted that Dr. Kalakada was Plaintiff's primary care physician and that he did not specialize in orthopedics and having further considered the consistency of his opinions with the record as a whole.

Plaintiff appears to take issue with the ALJ not specifically explaining why the portion of Dr. Kalakada's April 2014 opinion that found Plaintiff "moderately" limited in using her hands was not included in the RFC.  (Dkt. 11-1 at 20-21).  However, the ALJ was not required to include any of the limitations from the April 2014 opinion in the RFC— Dr. Kalakada stated that the limitations, including the hand-use limitation, were expected to last only four to six months, and limitations associated with impairments must last for a "continuous period of at least 12 months" to be considered disabling.  *See* 20 C.F.R. §§ 404.1509, 416.1509; *Barnhart v. Walton*, 535 U.S. 212, 213 (2002) (holding that the Social Security Act requires both the impairment and the subsequent inability to engage in any substantial gainful activity to last twelve months to meet the durational requirement for disability).  Indeed, as discussed above, this short duration was explicitly cited by the ALJ as a reason for according the entire opinion only partial weight.  Additionally, Plaintiff does not cite to any other portion of the record describing the alleged handling limitation. To the contrary, Plaintiff's other examinations consistently report no deficiencies in Plaintiff's grip and finger dexterity.  (*See, e.g.*, Dkt. 6-8 at 352 (Dr. Miller opinion from January 21, 2015 finding "[h]and and finger dexterity intact.  Grip strength 5/5 bilaterally")).   Moreover, unlike the limitations described in Dr. Miller's report, Dr.

Kalakada's opinion that Plaintiff is moderately limited in using her hands is vague. The only explanation provided for any of the physical limitations in the opinion is that Plaintiff is "unable to stand for prolonged periods/repeated bending/pushing/lifting weight" (Dkt. 6-7 at 240), which does not sufficiently support the handling and fingering limitations that Plaintiff suggests should have been included in her RFC.

For all these reasons, the Court finds no basis for reversal of the ALJ's determination of Plaintiff's physical RFC.

### B.    The ALJ Properly Evaluated Plaintiff's Mental Limitations

Plaintiff argues the ALJ's failure to analyze Plaintiff's diagnosis with borderline intellectual functioning using the special technique at step two was error. (Dkt. 11-1 at 21-26). "[T]he Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. § 404.1520a. These regulations require application of a 'special technique' at the second and third steps of the five-step framework[.]" *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *see* 20 C.F.R. § 404.920a. First, the ALJ determines "whether the claimant has a 'medically determinable mental impairment.'" *Id.* at 265-66 (quoting 20 C.F.R. § 404.1520a(b)(1)). If the ALJ finds the claimant has a medically determinable mental impairment, he next "must rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.*, which specifies the following four broad functional areas: (1) understanding, remembering, or applying information; (2) interaction with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). If the degree of limitation is rated as "none" or "mild," the ALJ

will generally conclude that the claimant's impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  20 C.F.R. § 1520a(d)(1).

In the instant matter, the ALJ gave great weight to the opinion of examining neurologist Dr. Santa Maria, who diagnosed Plaintiff with borderline intellectual functioning, but did not use the special technique at step two or three with regards to that diagnosis.  (Dkt. 6-2 at 39; Dkt. 6-10 at 461).  However, the Court finds that even if the ALJ should have used the special technique to analyze the severity of Plaintiff's borderline intellectual functioning, her failure to do so was harmless error because she incorporated the functional limitations described by Dr. Santa Maria into the RFC.  *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ("[W]hen functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error."); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (where ALJ excluded the plaintiff's anxiety disorder and panic disorder from his review, finding harmless error because the ALJ identified other severe impairments and proceeded with the subsequent steps, in which the ALJ specifically considered the plaintiff's anxiety and panic attacks).  Dr. Santa Maria found there was no evidence "of any cognitive or psychological contraindication to [Plaintiff] handling part time or full time competitive employment in entry level work roles of a fairly routine and repetitive nature," and that "[s]he might struggle in sales positions . . . though she may be able to handle some

entry level sales work including work on a modern style cash register." (Dkt. 6-10 at 463).

Accordingly, the ALJ included in the RFC that Plaintiff was "limited to detailed, but not

complex, work tasks, not involving a fast assembly quota pace." (Dkt. 6-2 at 31).

Plaintiff cites several cases in support of the proposition that failing to find

borderline intellectual functioning to be a severe impairment requires remand. However,

in all of these cases, the ALJ also disregarded evidence of functional limitations associated

with the plaintiff's mental impairments. *See Maldonado v. Comm'r of Soc. Sec.*, No. 16-

CV-6678 CJS, 2018 WL 1192894, at *4-5 (W.D.N.Y. Mar. 8, 2018) (remanding "because

the ALJ failed to properly develop the record concerning Plaintiff's mental impairments");

*Faison v. Berryhill*, No. 6:16-CV-06055(MAT), 2017 WL 3381055, at *3-4 (W.D.N.Y.

Aug. 5, 2017) (remanding where ALJ did not apply special technique to the plaintiff's

diagnosis with borderline intellectual functioning and it was not clear whether limitations

were assessed during the remaining steps); *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp.

3d 282, 298 (W.D.N.Y. 2016) ("[The ALJ] did not address Plaintiff's alleged-borderline

intellectual functioning impairment at step two or step three of the disability analysis. Even

assuming this omission would constitute harmless error because the ALJ found other

severe impairments at step two and proceeded with the sequential assessment, the Court

cannot say that the ALJ properly assessed a combination of Plaintiff's impairments, severe

and non-severe, during the remaining steps."). Here, as discussed above, the ALJ

incorporated the functional limitations described by Dr. Santa Maria into the RFC.

Plaintiff further contends the ALJ erred by not accommodating Dr. Santa Maria's

findings regarding Plaintiff's poor mathematics functioning, need for routine work, and

borderline IQ in the RFC.  However, the ALJ incorporated all of Dr. Santa Maria's functional findings into her decision—including those not mentioned by Plaintiff in her arguments, like the finding that Plaintiff demonstrated relative strength in her memory. (*See* Dkt. 6-10 at 463).  The ALJ's limitation of Plaintiff "to detailed, but not complex, work tasks, not involving a fast assembly quota pace" reflects the second-most restrictive reasoning level in the Dictionary of Occupational Titles.  Dictionary of Occupational Titles, Appendix C—Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991) ("Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.").  As far as Plaintiff's math skills, the ALJ found that Plaintiff could not perform her past relevant work as a sales attendant (Dkt. 6-2 at 38), reflecting Dr. Santa Maria's limitation that Plaintiff "might struggle in a sales position."  (Dkt. 6-10 at 463).  Therefore, the Court finds that the ALJ incorporated the functional limitations articulated by Dr. Santa Maria into her findings, and that remand on this basis is not warranted.  *See Casler v. Astrue*, 783 F. Supp. 2d 414, 418 (W.D.N.Y. 2011) (holding substantial evidence supported ALJ's decision where the ALJ's "factual findings incorporate[d] all of the limitations in plaintiff's RFC").

It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).  The ALJ reasonably concluded that Plaintiff failed to meet her burden in this case.  In formulating the RFC assessment, the ALJ considered the objective medical evidence, Plaintiff's treatment history, allegations, and the opinions of physicians.  As such, the RFC

assessment in this case is consistent with the record and is supported by substantial evidence.  Accordingly, neither reversal nor remand is warranted.

## <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:     May 11, 2020
           Rochester, New York